{¶ 94} In his third assignment of error, Haschenburger argues that his convictions are not supported by sufficient evidence, contending in particular that there is no evidence that he used force or threat of force to compel D.M. to submit to the sexual conduct. The majority agrees with Haschenburger regarding the tenth count against him, but concludes that there is sufficient evidence against him on the remaining nine counts because he was in a "position of authority" over D.M. and used psychological force to accomplish the offense. I must respectfully disagree. A review of the evidence shows that Haschenburger was not in a position of authority over D.M. Furthermore, there is no evidence that Haschenburger used or threatened physical force in order to accomplish the offense. Accordingly, there is insufficient evidence supporting each of Haschenburger's convictions and each of his convictions must be vacated.
 {¶ 95} "Sufficiency of the evidence" is "`a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.'" State v. Thompkins,78 Ohio St.3d 380, 386, 1997-Ohio-52, quoting Black's Law Dictionary (6 Ed.1990) 1433. The relevant inquiry when determining whether the evidence is sufficient to support the verdict "is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential *Page 21 
elements of the crime proven beyond a reasonable doubt." State v.Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of facts." Id. at 273. Whether the evidence is legally sufficient is a question of law. Thompkins at 386.
 {¶ 96} Haschenburger was charged with rape under R.C. 2907.02(A)(2), which provides:
 {¶ 97} "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."
 {¶ 98} "`Force' means any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C.2901.01(A). Force and threat of force "can be inferred from the circumstances surrounding sexual conduct." State v. Schaim,65 Ohio St.3d 51, 1992-Ohio-31, paragraph one of the syllabus. The forcible element is established where a defendant's actions create "the belief that physical force will be used if the victim does not submit" to the defendant's actions. Id. "A victim need not prove physical resistance to the offender" for a defendant to be found guilty of rape. R.C.2907.02(C).
 {¶ 99} In State v. Eskridge (1988), 38 Ohio St.3d 56, the Ohio Supreme Court recognized that "[t]he force and violence necessary to commit the crime of rape depends upon the age, size and strength of the parties and their relation to each other." Id. at paragraph one of the syllabus. For instance, the filial obligation of obedience to a parent means that an offender does not need to use the same degree of force and violence on a person of tender years as would be required were the parties more nearly equal in age, size and strength. Id. The Ohio Supreme Court has recognized that relationships other than parent-child relationships may contain this same obligation of obedience. See State v. Dye,82 Ohio St.3d 323, 1998-Ohio-234. Accordingly, it has extendedEskridge's rationale to any time someone is "in a position of authority over a child under thirteen." Id. at syllabus. In such a case, a person "may be convicted of rape of that child with force pursuant to R.C.2907.02(A)(1)(b) and (B) without evidence of express threat of harm or evidence of significant physical restraint." Id. *Page 22 
 {¶ 100} In order to establish force under Eskridge and Dye, the defendant must be in a position of authority over a child. This "cannot be established by the mere fact appellant is an adult." State v.Drayer, 10th Dist. No. 03AP-1033, 2004-Ohio-5061, at 31. Furthermore, a person does not necessarily have a position of authority over a child merely due to that person's relationship to the rest of the family. SeeState v. Byrd, 8th Dist. No. 82145, 2003-Ohio-3958 (Defendant was not in a position of authority of a child merely because he was the child's godparent); State v. Jackson, 10th Dist. Nos. 02AP-289 and 02AP-298, 2003-Ohio-37 (Defendant was not in a position of authority over a child merely because he had been living with the child's mother.). Someone may have the authority to punish a child, but yet not have forced the child to submit to sexual conduct. See State v. Edinger, 10th Dist. No. 05AP-31, 2006-Ohio-1527, at ¶ 50.
 {¶ 101} In Dye, the Ohio Supreme Court found that the defendant, a non-parent, was in a position of authority over a child. In that case, the child was nine and the defendant was forty-four, the child's mother had known the defendant for seven years, and the child had maintained a close relationship with the defendant over that time, visiting and staying at the defendant's residence approximately once a week. "Clearly, the defendant was an important figure of authority in David's life." Id. at 328.
 {¶ 102} However, the Ohio Supreme Court found that the most important facts supporting the finding that this defendant was in a position of authority over the child was that "when David's mother dropped David off at the defendant's residence or when the defendant picked David up and took him to his home, David's mother told him to mind the defendant, and not to aggravate him, or she would come and pick him up or the defendant would bring him home. * * * The defendant was clearly the authority figure to David when David was at the defendant's home, which is where the sexual conduct took place." Id. at 329. Thus, the critical fact establishing that the non-parent was in a position of authority over a child was that the child's mother told him that the defendant was in charge and he should mind the defendant. Id.
 {¶ 103} This court has looked to similar facts to determine whether a non-parent is in a position of authority over a child. For instance, inState v. Parker, 7th Dist. No. 04CO44, 2005-Ohio-6777, the defendant was charged with raping more than one *Page 23 
sibling. The non-parent had been the children's grandmother's boyfriend for over thirty years and had lived with him for over eight years. The grandmother was the adoptive mother of three of these children and the acting mother for all of them. The defendant disciplined the children, made rules, and enforced chores, "basically act[ing] as the father of these children." Id. at ¶ 67. This court found that the defendant was in a position of authority as to these children.
 {¶ 104} Other courts look to these same kinds of facts. In State v.Reinhardt, 10th Dist. No. 04AP-116, 2004-Ohio-6443, the defendant was in a position of authority because "of his live-in relationship with her mother, which eventually culminated in the birth of N.J.M.'s half-sister. In addition, defendant was N.J.M.'s sole caretaker while N.J.M.'s mother worked 12-plus hour shifts outside the home. From this evidence, the jury could reasonably infer that defendant, in Lisa's absence, was N.J.M.'s disciplinarian and had the authority to punish her if she disobeyed him. Indeed, when defendant told N.J.M. to `shut up and turn [her] head' when she requested that he stop abusing her, she dutifully obeyed his order." Id. at ¶ 28.
 {¶ 105} Likewise, in State v. Triplett, 6th Dist. No. L-04-1135,2006-Ohio-5465, a non-parent was in a position of authority because the six year-old victim's family lived with the defendant and had a "father-daughter" relationship with the defendant, which included the authority to discipline the child. Id. at ¶ 7, 17, 19-20, see alsoState v. Milam, 8th Dist. No. 86268, 2006-Ohio-4742 (Defendant was in a position of authority with regard to the victim because he was the father of one of the victim's friends, the victim spent many nights at the defendant's home, and the victim testified that the defendant was "in charge" of him while at the defendant's home.); State v.Martin, 10th Dist. No. 05AP-818, 2006-Ohio-2749, at ¶ 35 (Defendant was in a position of authority because he lived with the younger-than-eleven year-old victim and her mother for three years and a father-daughter relationship existed between the two, which included the authority to discipline.); State v. Riggs, 10th Dist. Nos. 04AP-1279 and 04AP-2380,2005-Ohio-5244, at ¶ 8-9, 21 (Children's Services placed child in custody of appellant and his wife and the two "provided for M.C.'s needs and acted as her parents."); State v. Boiling, 2d Dist. No. 20225,2005-Ohio-2509, at ¶ 41 (Mother's live-in boyfriend had "assumed a role of parental authority" over the eight year-old *Page 24 
child, including disciplining the child, so he was in a position of authority over the child.); State v. Sparks, 9th Dist. No. 22111,2005-Ohio-2154, at ¶ 2, 14 (Defendant was in a position of authority over the child when he befriended a nine year-old child's mother, established a paternal-type relationship with the child, and the child was routinely entrusted to care for the boy by the boy's mother who instructed the boy to listen and obey.); State v. Fille, 12th Dist. No. CA2001-08-066, 2002-Ohio-3879, at ¶ 46-47 (Defendant was in a position of authority with a child when the child was only 23 months old and he was the live-in boyfriend of the child's mother.).
 {¶ 106} The facts of this case are significantly different than the facts in other cases where courts have found a non-parent to be in a position of authority over a child. The evidence in this case shows that Haschenburger was a close friend of the victim's father, celebrated holidays with the family, and was otherwise at their house constantly. However, he had no disciplinary authority over the children and the victim merely saw him as a "fun uncle," a description which does not indicate that she saw him as someone to whom she owed an almost "filial obligation of obedience." Eskridge at paragraph one of the syllabus. The facts of this case do not show that Haschenburger was in a position of authority over this child.
 {¶ 107} As the majority recognizes, Haschenburger did not use or threaten physical force to compel the victim to submit to sexual conduct and, since he was not in a position of authority over the child, he did not use psychological force either. Accordingly, there is not sufficient evidence to support Harschenburger's convictions for Rape under R.C.2907.02(A)(2).
 {¶ 108} This does not mean that Haschenburger could not have been found guilty of some other offense if the jury had been presented with those options. For instance, it is almost certain that jury would have found Haschenburger guilty of unlawful sexual conduct with a minor under R.C. 2907.04(A), which in this case would have been a third degree felony, if given the chance. Likewise, the jury arguably may have found him guilty of sexual battery under R.C. 2907.03(A)(1), which also would have been an third degree felony, since sexual conduct by coercion encompasses more behavior than sexual conduct by force. State v.Bajaj, 7th Dist. No. 03 CO 16, *Page 25 2005-Ohio-2931, at ¶ 22. But the fact remains that the jury did not find him guilty of these offenses. Instead, it found him guilty of rape.
 {¶ 109} The evidence does not support the jury's conclusion that Haschenburger raped the victim. Accordingly, the trial court's decision should be reversed and Haschenburger's convictions should be vacated. *Page 1